## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>POLISHED.COM INC., *et al.*,<br><br>Debtors.[1] | Chapter 7<br><br>Case No. 24-10353 (TMH)<br><br>(Jointly Administered)<br><br>**Objection Deadline: July 18, 2025 at 4:00 p.m.**<br>**Hearing Date: July 25, 2025 at 11:00 a.m.** |

## MOTION OF DYNAMIC MARKETING INC. FOR ALLOWANCE
## AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Dynamic Marketing Inc. ("DMI"), by and through its undersigned counsel, hereby respectfully moves this Court (this "Motion"), pursuant to sections 365(d)(3) and 503 of title 11 of the United States Code, 11 U. S.C. §§ 101-1532 (the "Bankruptcy Code"), for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), compelling the Chapter 7 Trustee (defined below) to timely perform all of the obligations of the Debtors under the Cabot Sublease and Lamberton Sublease (both defined below, and together, the "Subleases") and directing and authorizing the allowance and payment of an administrative expense priority claim in the amount of $1,640,677.28 (the "Administrative Claim") for post-petition rent and other amounts due and owing under the Subleases.[2]  In support of this Motion, DMI respectfully states as follows.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are: Polished.com Inc. (3938); 1 Stop Electronics Center, Inc. (9485); AC Gallery Inc. (3629);Appliances Connection Inc. (8366); Gold Coast Appliances, Inc. (1575); Joe's Appliances LLC (8354); SuperiorDeals Inc. (0096); and YF Logistics LLC (8373).

[2] To the extent the Administrative Expense Claim is not paid as an administrative expense priority claim under sections 365 and 503 of the Bankruptcy Code, DMI reserves all rights to assert that the amounts due and owing under the Subleases are secured claims.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U. S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a), 365(d)(3) and 503(b) of the Bankruptcy Code.

**Background**

4.      On March 7, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief in the Court under chapter 7 of the Bankruptcy Code.

5.      On March 12, 2024, George L. Miller was appointed as the chapter 7 trustee (the "Chapter 7 Trustee") for the Debtors.  *See* Docket No. 8.

6.      On June 27, 2024, the Court entered the *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Debtors' Assets; (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f) and 363(m); and (III) Granting Related Relief* [Docket No. 100] (the "Sale Order").

7.      DMI is a cooperative corporation that purchases appliances and electronics wholesale in large quantities and then sells the goods to its shareholders at competitive prices.  1 Stop Electronics Center, Inc. ("1 Stop") is a shareholder of DMI pursuant to that certain Collateral Agreement (the "Collateral Agreement") dated November 15, 2022 by and between 1 Stop and

DMI.  As set forth in the Collateral Agreement, as security for all debts and obligations owed by

1 Stop to DMI, 1 Stop pledged to DMI, and granted DMI a security interest in and to, and liens

upon, the following:

- All shares of DMI common stock owned by 1 Stop, including but not limited to, dividends and distributions, refunds and rebates, capital accounts and all proceeds of the foregoing;

- All of 1 Stop's interest in additional capital and additional paid in capital to DMI as defined in DMI's bylaws, including but not limited to, dividends and distributions, refunds and rebates, capital accounts and all proceeds of the foregoing; and

- All obligations and indebtedness owed by DMI to 1 Stop, including but not limited to, any loans or advances made by 1 Stop to DMI and proceeds thereof.

The Collateral Agreement grants DMI certain rights of setoff and recoupment.

8.     As of May 1, 2025, DMI is holding the following amounts pursuant to and under

the Collateral Agreement, among others:

- 1 Stop equity account in the amount of $393,865.64

- 1 Stop cash holdbacks in the amount of $155,432.28

- 1 Stop volume rebates in the amount of $774,096.06

- 1 Stop open invoice balance in the amount of ($2,937.77) Credit

- 1847 Goedeker Inc. (n/k/a Polished.com Inc.) equity account in the amount of $566.13

- Superior Marketing (a/k/a Superior Deals Inc.) open invoice balance in the amount of at least $81,152.51

9.     Prior to the Petition Date, DMI subleased to one or more of the Debtors a portion

of two warehouses located in Hamilton, New Jersey.  The warehouses were subject to overleases

by and between DMI and the respective overlandlord.

A.     **The Cabot Sublease**

10.     YF Logistics LLC d/b/a 1 Stop Camera ("<u>YF Logistics</u>") and DMI entered into that certain sublease agreement (as amended, the "<u>Cabot Sublease</u>")[3] dated May 31, 2019 pursuant to which YF Logistics subleased from DMI a portion of Unit A (the "<u>Cabot Premises</u>") located at a distribution center with a common address of 400 Cabot Drive, Hamilton Township, New Jersey (the "<u>Cabot Warehouse</u>").  Among other things, YF Logistics used the Cabot Warehouse to store property belonging to 1 Stop.  Rent for the Cabot Premises was due and payable on or before the first day of each calendar month in advance.  *See* Cabot Sublease § 5(a).  The amount of rent payable by subtenant is based on the amount of space subleased and the pro rata percentage of the rent and other charges that DMI paid to the overlandlord under the Cabot Overlease plus certain utility expenses.  *See id.* § 5(b).

11.     The Cabot Sublease terminated by its terms on April 30, 2020, at which time it automatically renewed for successive one-year terms until the earlier of (i) either party providing thirty days prior written notice of its decision to not renew the Cabot Sublease or (ii) April 30, 2024, the date on which the Cabot Overlease for the Cabot Warehouse expired, unless terminated earlier for any reason, upon thirty days' prior written notice to the other.  *See id.* § 4.

12.     On November 30, 2023, DMI provided written notice to YF Logistics and 1 Stop of its election to terminate the Cabot Sublease as of December 31, 2023.  Notwithstanding, YF Logistics did not surrender the Cabot Premises to DMI.  Rather, YF Logistics and 1 Stop continued to occupy and use the Cabot Premises with the consent of DMI while improvements were made to

---

[3] A copy of the Cabot Sublease is attached hereto as **Exhibit B**.

DMI was the tenant under that certain Multi-Tenant Industrial Triple Net Lease dated August 2, 2013 (as amended, the "<u>Cabot Overlease</u>") with Icon 400 Cabot Owner Pool 4 NJ, LLC, successor-in-interest to 400 Cabot Drive, LLC for the Cabot Warehouse.  The Cabot Overlease is attached as Exhibit A to the Cabot Sublease.

1 Stop's section of a new warehouse located at 1369 Lamberton Road, Hamilton Township, New Jersey.  Accordingly, after December 31, 2023, YF Logistics and 1 Stop became month-to-month tenants subject to the terms and conditions of the Cabot Sublease.  Indeed, 1 Stop paid rent to DMI after December 31, 2023 in the amount set forth in the Cabot Sublease.  *See id.*

13.     On April 30, 2024, the Court entered the *Order Rejecting Sublease Agreement and Authorizing Abandonment of All Remaining Property of the Estate Located at the Cabot Warehouse-Unit A* (the "Rejection Order") [Docket No. 47].  Pursuant to the Rejection Order, the Cabot Sublease was deemed rejected effective as of April 30, 2024, and the Chapter 7 Trustee was authorized to abandon any remaining property of the estate located at the Cabot Premises or in the parking lot of the Cabot Warehouse.

14.     Upon termination of the Cabot Sublease, YF Logistics and 1 Stop were required to promptly vacate the Cabot Premises in the same condition as it was at the beginning of the Cabot Sublease, with the exception of ordinary wear and tear.  *See* Cabot Sublease §§ 8, 12.

15.     The property abandoned by the Chapter 7 Trustee at the Cabot Warehouse was substantial and included, among other things, trucks, trailers, a car, oil, chemicals, drums, tires, appliances, office equipment and trash.  The cost to remove and dispose of the abandoned property was $50,350.00.[4]  YF Logistics and 1 Stop are required to reimburse DMI for these costs and expenses under the Cabot Sublease.  *See* Cabot Sublease §§ 2, 8, 10; *see also* Cabot Overlease §§ 9.1, 10.1, 10.2, 12, 18.9.2, Ex. D, Ex. H.

16.     The Chapter 7 Trustee did not perform any repair or restoration work on the Cabot Premises as required by the Cabot Sublease.  When the Chapter 7 Trustee vacated and surrender

---

[4] Invoices from Munnlane Workplace and MXI Environmental related to the removal and disposal of abandoned property at the Cabot Premises are attached hereto as **Exhibit C**.

the Cabot Premises, there was damage to the demising wall as well as hardware, signage and chargers that needed to be removed, among other things.  The cost to repair and restore the Cabot Premises was $109,031.40.[5]   YF Logistics and 1 Stop are required to reimburse DMI for these costs and expenses under the Cabot Sublease.  *See* Cabot Sublease §§ 2, 8, 10; *see also* Cabot Overlease §§ 9.1, 10.1, 10.2, 12, 18.9.2, Ex. H.

17.    After the Petition Date, the Chapter 7 Trustee did not pay *any* post-petition rent or other amounts due and owing under the Cabot Sublease.[6]   Accordingly, as of the date hereof, the Debtors owe DMI no less than $215,631.40 under and pursuant to the Cabot Sublease as set forth below:

- April 2024 rent in the amount of $56,250.00
- Costs related to the removal and disposal of the abandoned property at the Cabot Warehouse in the amount of $50,350.00
- Costs related to the repair and restoration of the Cabot Premises in the amount of $109,031.40

**B.    The Lamberton Sublease**

18.    1 Stop and DMI entered into that certain Sublease (as amended, the "Lamberton Sublease")[7] dated November 20, 2023 pursuant to which 1 Stop subleased from DMI a portion (the "Lamberton Premises") of a distribution center with a common address of 1369 Lamberton Road, Hamilton Township, New Jersey (the "Lamberton Warehouse").  The Lamberton Sublease expires by its terms on September 30, 2030.  *See* Lamberton Sublease § 1.9.

---

[5] The invoice from LINK related to the repair and restoration of the Cabot Premises is attached hereto as **Exhibit D**.

[6] The invoice for April 2024 rent for the Cabot Premises is attached hereto as **Exhibit E**.

[7] A copy of the Lamberton Sublease is attached hereto as **Exhibit F**.  The Lamberton Sublease was amended pursuant to that First Amendment to Sublease dated December 20, 2023 (the "First Amendment") to supersede and substitute the plans attached as Exhibit B-1 to the Lamberton Sublease.  All other terms and conditions of the Lamberton Sublease remain in full force and effect.

DMI is the tenant under that certain lease dated February 7, 2023 (the "Lamberton Overlease") with HRP Mercer Urban Renewal, LLC for the Lamberton Warehouse.  The Lamberton Overlease, which is Exhibit C to the Lamberton Sublease, is available upon request to undersigned counsel.

19.     Pursuant to the Lamberton Sublease, 1 Stop is required to pay base rent ranging from $245,241.34 to $317,359.74 per month plus electricity, taxes, certain other charges and expenses and management fee to DMI.  *See id.* §§ 1.10, 1.14, 1.15, 3.3, 3.7, Ex. E.  Rent is due at least five (5) business days prior to the first day of the month.  *See id.* § 3.

20.     As set forth in Section 4.4 of the Lamberton Sublease, 1 Stop agreed and acknowledged that the cost of Sublandlord's Work for which DMI shall be responsible for, and pay, shall not exceed $1,140,000, and 1 Stop agreed to be responsible for, and pay as additional rent, all amounts of Sublandlord's Work incurred in excess of $1,140,000.  *See id.* § 4.4.  The amount to complete the Sublandlord's Work was $1,521,234.73.[8]  Pursuant to the Lamberton Sublease, 1 Stop is responsible for and required to pay as additional rent $381,234.73.

21.     Pursuant to the Sale Order, the Lamberton Sublease was deemed rejected effective as of the Closing Date, which was June 28, 2024.

22.     After the Petition Date, the Chapter 7 Trustee did not pay *any* post-petition rent or other amounts due and owing under the Lamberton Sublease.[9]  Accordingly, as of the date hereof, the Debtors owe DMI no less than $1,285,077.20 under and pursuant to the Lamberton Sublease as set forth below:

- April 2024 rent in the amount of $297,928.93
- May 2024 rent in the amount of $299,918.29
- June 2024 rent in the amount of $305,995.25
- Sublandlord Work in the amount of $381,234.73

---

[8] The invoice from Hassett Enterprises, Inc. for the Sublandlord Work is attached hereto as **Exhibit G**.

[9] Invoices for April, May and June 2024 rent for the Lamberton Premises are attached hereto as **Exhibit H**.

23. Additionally, DMI is entitled to recover its attorneys' fees under the Subleases. *See* Cabot Sublease § 10, Lamberton Sublease § 6.3. DMI incurred approximately $139,968.68 in attorneys' fees in connection with enforcing the Subleases prior to rejection.

### Relief Requested and Basis Therefore

24. By this Motion, DMI seeks entry of the Proposed Order directing and authorizing the allowance and payment of an administrative expense priority claim in the amount of $1,640,677.28 for all post-petition amounts arising under the Subleases pursuant to sections 365(d)(3) and 503(b) of the Bankruptcy Code.

25. Section 365(d)(3) of the Bankruptcy Code requires the trustee to timely perform all the obligations of the debtor "arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." *See* 11 U.S.C. § 365(d)(3). The purpose of this section is "to protect landlords by requiring debtors to timely perform their obligations arising under the lease" in full as they come due in the post-petition, pre-rejection period. *In re Valley Media, Inc.*, 290 B.R. 73, 74 (Bankr. D. Del. 2003). Here, the Chapter 7 Trustee failed to pay *any* post-petition rent or other lease obligations for either the Cabot Premises or the Lamberton Premises prior to rejection of the Cabot Sublease and Lamberton Sublease on April 30, 2024 and June 28, 2024, respectively.

26. Moreover, section 503(b) of the Bankruptcy Code provides that, upon the request of a party in interest, and "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To qualify as an administrative expense under section 503(b)(1)(A), a claimant must demonstrate that the expense arises out of a transaction between the debtors and claimant, and that the transaction directly benefitted the debtors. *See In re O'Brien Env't Energy Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999). It is well-settled that the "debtor's use and occupancy

of leased premises post-petition is an actual and necessary expense of preserving the estate" giving rise to an administrative expense under section 503(b) of the Bankruptcy Code. *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 315 (Bankr. D. Del. 2009) (noting that the "amount of the benefit to the estate is presumed to be the contract rate of rent").

27.     It is undisputed that after the Petition Date, the Debtors used and occupied the Cabot Premises and Lamberton Premises. In fact, the Debtors' inventory and other assets that the Chapter 7 Trustee marketed for sale – and eventually sold pursuant to the Sale Order – were stored at the Cabot Premises and Lamberton Premises. Accordingly, the use and occupancy of the Cabot Warehouse and Lamberton Warehouse directly benefitted the Debtors and their estates as it enabled the Chapter 7 Trustee to store and preserve the Debtors' assets prior to the closing date of the sale. As a result, there should be no dispute that the post-petition rent and other amounts due and owing under the Subleases are necessary expenses of preserving the estate.

28.     Additionally, DMI is entitled to attorneys' fees as provided for in the Subleases. *See In re JLM Couture, Inc.*, 661 B.R. 862, 874 (Bankr. D. Del. 2024) (awarding landlord attorneys' fees permitted by the lease that were incurred in connection with enforcing the lease); *In re Muma Servs. Inc.*, 279 B.R. 478, 489 (Bankr. D. Del. 2002) (awarding landlord attorneys' fees under section 365(d) of the Bankruptcy Code). As of the date the Subleases were rejected, DMI had incurred $139,968.68 in attorneys' fees.

29.     For the reasons set forth herein, DMI requests that its Administrative Claim in the amount of $1,640,677.28 for all post-petition amounts owed and unpaid under the Subleases be allowed and immediately paid as an administrative expense priority claim under section 365(d)(3) and 503(b) of the Bankruptcy Code.

## Notice

30.     Notice of this Motion has been provided to: (i) the United States Trustee for the District of Delaware, (ii) the Chapter 7 Trustee and his counsel; and (iii) all parties who requested notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

31.     No prior request for the relief sought in this motion has been made to this Court or any other court.

**WHEREFORE**, DMI respectfully requests that the Court enter the Proposed Order attached hereto as **Exhibit A** (i) allowing the Administrative Claim in the amount of $1,640,677.28, (ii) directing that the Chapter 7 Trustee pay the Administrative Claim within five calendar days of entry of the Proposed Order, and (ii) granting such other and further relief that may be just and proper.

Dated:  July 11, 2025                    **COLE SCHOTZ P.C.**

*/s/ Stacy L. Newman*
Stacy L. Newman (No. 5044)
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: snewman@coleschotz.com

*Counsel to Dynamic Marketing Inc.*