IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 7 |
| POLISHED.COM INC., *et al.*,[1] | ) ) | Case No. 24-10353 (TMH) |
| Debtors. | ) ) ) | (Jointly Administered) **Ref. Docket No. 184** |

Hearing Date: July 25, 2025 at 11:00 a.m. (ET)

**CHAPTER 7 TRUSTEE'S OBJECTION AND
RESERVATION OF RIGHTS TO MOTION OF DYNAMIC MARKETING INC.
FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

George L. Miller, chapter 7 trustee (the "Trustee") of the above-captioned debtors (the "Debtors"), hereby submits this objection (the "Objection") to the *Motion of Dynamic Marketing Inc. for Allowance and Payment of Administrative Expense Claim* [Docket No. 184] (the "Motion") filed by Dynamic Marketing Inc. ("DMI").[2] In support of this Objection, the Trustee respectfully represents as follows:

**Objection**

1. DMI seeks an Administrative Claim in the amount of $1,640,677.28 and immediate payment of such claim. The Trustee objects to the Administrative Claim to the extent that DMI has not proven such claim is entitled to administrative expense status in the appropriate amounts through full and complete documentation. In addition, certain components of the Administrative Claim appear to be prepetition obligations that are not entitled to administrative expense priority. The Trustee has requested certain documentation from DMI in an effort to diligence the amounts

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are: Polished.com Inc. (3938); 1 Stop Electronics Center, Inc. (9485); AC Gallery Inc. (3629); Appliances Connection Inc. (8366); Gold Coast Appliances, Inc. (1575); Joe's Appliances LLC (8354); Superior Deals Inc. (0096); and YF Logistics LLC (8373).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

asserted. Until such documentation is received, the Trustee objects and reserves any and all rights related to the asserted Administrative Claim.[3]

2. In addition, the Trustee cannot immediately pay DMI's asserted Administrative Claim because not all administrative claims have been determined on a final basis, no funds are currently available for a distribution, and the Trustee cannot prefer one administrative creditor over others.

## Applicable Law

3. Section 503(b) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. 503(b)(1)(A). Because section 503 administrative expense claims are afforded priority pursuant to section 507(a)(1) of the Bankruptcy Code, allowance of such claims is narrowly construed. *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001); *In re Molnar Bros.*, 200 B.R. 555, 558 (Bankr. D.N.J. 1996). The burden of proving an entitlement to an administrative expense claim is on the claimant. *In re O'Brien Envt'l Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999).

4. To qualify for administrative priority, the expense must represent "a concrete, discernible benefit" to the estate; a "speculative benefit or the mere potential for benefit is not enough." *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 490 (Bankr. S.D.N.Y. 1991) (quoting *In re United Trucking Serv., Inc.*, 851 F.2d 159, 162 (6th Cir. 1988)); *see also Am. Anthracite & Bituminous Coal Comp. v. Leonardo Arrivabene, S. A.*, 280 F.2d 119, 126 (2d Cir. 1960). Thus, as the Third Circuit has summarized, "[f]or a claim in its entirety to be entitled to

---

[3] Nothing in this Objection is intended to waive or limit the Trustee's rights with respect to any other rights, claims, or defenses the Debtors' estates may have with respect to DMI unrelated to the Motion, and the Trustee reserves any and all such rights, claims, and defenses with respect to DMI.

first priority under [section 503(b)(1)(A) of the Bankruptcy Code], the debt must arise from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *O'Brien*, 181 F.3d at 532–33 (3d Cir. 1999) (citation omitted). Additionally, "[a] party seeking payment of costs and fees as an administrative expense must . . . carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Id.*; *see also In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005) ("The claimant bears the burden of proving its actions conferred a benefit upon the estate.").

5. Because claimants bear the burden of establishing entitlement to administrative priority, courts carefully scrutinize requests for administrative expenses to prevent certain creditors from receiving an unfair advantage over other similarly situated creditors. *See In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) ("The applicant must prove his entitlement to the requested compensation and expense reimbursement by a preponderance of the evidence."). As such, an applicant seeking compensation or reimbursement under section 503(b)(1)(A) of the Bankruptcy Code carries a "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Id.* (quoting *O'Brien*, 181 F.3d at 532–33).

6. Bankruptcy courts apply a two-part test in determining whether a creditor has an administrative claim under section 503(b)(1)(A) of the Bankruptcy Code. The claimed expenses must (i) arise out of a postpetition transaction with the trustee or debtor in possession and (ii) directly and substantially benefit the estate. *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999); *see also Unidigital*, 262 B.R. at 288; *In re Pinnacle Brands, Inc.*,

259 B.R. 46, 51 (Bankr. D. Del. 2001) ("[T]he expense must have arisen from a post-petition transaction between the creditor and the trustee and the transaction must have substantially benefitted the estate.").

**Argument**

7. DMI cannot carry its burden to establish entitlement to administrative expense status for its Administrative Claim.

8. ***First***, one of the categories of DMI's Administrative Claim is Sublandlord Work in the amount of $381,234.73 under section 4.4 and Exhibit B of the Lamberton Sublease. Maintenance and repair costs are not entitled to administrative expense treatment if the obligation arose prepetition (e.g., if the condition at issue existed prior to the commencement of the case). *See In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 473 (Bankr. D. Del. 2006) ("Hayes did present credible evidence that the damage to Machines 3-11 occurred pre-petition. . . . GECC has offered no rebuttal evidence to establish that the damage occurred post-petition. Therefore, the Court concludes that no administrative expense can be allowed for Machines 3-11."); *see also In re Atlantic Container Corp.*, 133 B.R. 980, 992 (Bankr. N.D. Ill. 1991) ("Only the costs of remedying damages to the Premises which actually occurred after the filing of the bankruptcy petition may be treated as administrative expenses."); *In re United Trucking Serv.*, 851 F.2d 159, 164 (6th Cir. 1988) (denying administrative expense status to a claim for damages to trucks that had occurred prepetition).

9. The invoice attached to the Motion relating to the Lamberton Sublease is dated October 2024. *See* Ex. G to Motion. However, the Lamberton Sublease was signed in November 2023, and, later, during the chapter 7 cases, the lease was rejected effective as of June 28, 2024. Motion ¶ 21. The petition date in these chapter 7 cases was March 7, 2024. Thus, it appears that

the Sublandlord Work commenced (or was intended to be commenced) well before the petition date in these chapter 7 cases. If some of the work was completed prepetition but not finished, that only proves the Trustee's point even more – the Sublandlord Work was a prepetition obligation intended as a build out of the subleased space for the sublessee debtor, 1 Stop Electronics Center, Inc. Therefore, any maintenance and repair costs would have benefited DMI, not the Debtors' estates.[4] Accordingly, such costs should not be treated as an administrative expense. Alternatively, to the extent that the Sublandlord Work with respect to the Lamberton Sublease is related to the initial buildout from when the Lamberton Sublease was signed by 1 Stop in November 2023, any obligations with respect thereto would be a prepetition claim. In either case, administrative expense status is not warranted.

10. **Second**, for the Cabot Sublease, DMI asserts $50,350.00 for costs "related to the removal and disposal of the abandoned property at the Cabot Warehouse and $109,032.40 for costs "related to the repair and restoration of the Cabot Premises." Motion ¶17. These costs are not administrative expenses. Whether analyzed under section 503 or section 365(d)(3), such costs are prepetition obligations. Under section 503(b), cleanup costs or repair costs do not meet the section 503 standard in that they do not arise out of a postpetition transaction with the trustee

---

[4] Similarly, DMI's reliance on section 365(d)(3) does not help transform the Sublandlord Work into an administrative claim. Section 365(d)(3) of the Bankruptcy Code requires a trustee to timely perform the obligations of the debtor until rejection. In *Montgomery Ward*, the Third Circuit interpreted this provision as requiring that a landlord be reimbursed in full for tax payments that were billed post-petition, but which accrued pre-petition. *Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward)*, 268 F.3d 205, 211 (3d Cir. 2001) ("[A]n obligation arises under a lease for purposes of § 365(d)(3) when the legally enforceable duty to perform arises under that lease."). This is the billing date approach used in the Third Circuit. If the Sublandlord Work began prepetition and the lease obligated 1 Stop to perform with payment prepetition, then the costs associated with the Sublandlord Work are prepetition obligations. Section 4.3 of the Lamberton Lease requires the Sublandlord to notify the Subtenant when the work is substantially completed, and then such notice becomes binding on the Subtenant within 10 business days (i.e.. creating the obligation to pay). *See* Lamberton Lease § 4.3. Given that the work was never substantially completed, the required notice could not have been sent and no obligation trigger occurred postpetition. And the Trustee is not aware of 1 Stop receiving any bills for the Sublandlord Work post-petition but pre-rejection, like the tax bills in *Montgomery Ward*.

and do not directly and substantially benefit the estate.  Under section 365(d)(3), other courts have rejected similar arguments from landlords that post-rejection cleanup costs and repair costs under prepetition leases are administrative expenses.  *See ATM Forum Louisville KY, LLC v. Lucky's Mkt. Parent Co. (In re Lucky's Mkt. Parent Co.)*, 2022 U.S. Dist. LEXIS 50328, at *45 (D. Del. Mar. 22, 2022) ("Courts routinely hold that clean-up costs like those asserted here are pre-petition obligations."); *In re Unidigital, Inc.*, 262 B.R. 283 (Bankr. D. Del. 2001) (rejecting landlord's argument, following debtor's abandonment of large printing press in a leased facility, that landlord was entitled to an administrative expense claim for its costs of removing the equipment and cleaning the premises); *see also In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 55 (Bankr. S.D.N.Y. 2004) (rejecting landlord's arguments under both section 503(b) and section 365(d)(3) that cleanup costs following rejection of lease are administrative expenses).

11.    ***Third***, DMI asserts "approximately $139,968.68" in attorneys' fees enforcing the Subleases before rejection.  The Trustee has asked for appropriate documentation to ensure that the fees are reasonable, related to enforcement of the lease, and limited to issues on which DMI "prevailed."  Attorneys' fees under the Subleases must be reasonable, related to enforcement of the lease, and are only permitted on issues on which the landlord prevailed.  *See, e.g.*, *In re Pelican Pool & Ski Center, Inc.*, 2009 Bankr. LEXIS 4623, at *15-16 (D. N.J. July 27, 2009); *In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del. 2001).  Until such time as those requirements have been proven, the Trustee objects to DMI asserting attorneys' fees as part of its Administrative Claim.

12.    ***Finally***, to the extent that DMI seeks immediate payment of any allowed administrative expense claim, at this time the Debtors' estates do not have available funds to pay administrative expense claims.  The Trustee negotiated a limited carveout of unencumbered funds

through a stipulation with Bank of America, N.A. ("BOA") as agent for the Lenders. *See* Docket No. 65 (the "Sharing Agreement Stipulation"). The Sharing Agreement Stipulation only provided a limited category of carveout funds designated for certain purposes. *See* Sharing Agreement Stipulation ¶12.

13. At this time, the estates do not have sufficient funds to make a distribution to all administrative expense creditors. The Trustee will be pursuing the estates' claims under the Sharing Agreement Stipulation in certain categories of assets --- avoidance actions, commercial torts, D&O claims, etc. (i.e., "Excluded Collateral"), *see* Sharing Agreement Stipulation ¶ 3, but that process will take time as it does in any chapter 7 case. Once those assets are liquidated and reduced to cash, the Trustee will have 10% net proceeds of such available cash for distribution to creditors. *See* Sharing Agreement Stipulation ¶12.iii.

14. Thus, forcing immediate payment of a single administrative claim over other similarly-situated claims would be prejudicial to other administrative creditors of the estates. Thus, the most the Trustee can provide at this point is allowance of a claim, and DMI should only receive a distribution as and when other similarly-situated administrative expense claims receive distributions.[5]

---

[5] DMI is also already in a better position than a standard administrative creditor because it is holding a $490,482.68 security deposit under the Lamberton Sublease, a fact not mentioned in the Motion. *See* Proof of Claim #233-2 (Case No. 24-10354, 1 Stop Electronics Center, Inc.)

**Reservation of Rights**

15.     The Trustee reserves all rights to supplement this Objection on any and all available substantive and non-substantive grounds that bankruptcy and nonbankruptcy law may permit, to conduct discovery into the matters raised by the Motion, and to present evidence at any hearing on the Motion.

**Conclusion**

16.     For the reasons set forth above, the Motion should be denied in so far as it seeks administrative expense status for the various categories of amounts indicated in this Objection.

Dated: July 17, 2025                                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*
Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: bsandler@pszjlaw.com
            pkeane@pszjlaw.com
            ecorma@pszjlaw.com

*Counsel to George L. Miller, Chapter 7 Trustee*