## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 7 |
| YF LOGISTICS LLC, | Case No. 24-10361-TMH |
| Debtor. | |

### AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM THE STAY

I, __PAUL TANGEN__, being duly sworn, deposes and says:

1. I am employed as a __BANKRUPTCY ANALYST__ by AIS Portfolio Services, LLC, the bankruptcy servicer and custodian of records for Ally Bank ("Movant"), and declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

2. I have authority to make this affidavit. Further, I have personally reviewed the records of Movant, and make the statements herein based upon personal knowledge obtained therein.

3. The information hereinafter given is contained in the original books and records maintained in the office of Movant.

4. The amount of the indebtedness and the nature and extent of default set forth in the Motion for Relief from the Automatic Stay (the "Motion") is information derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, the records were kept in the course of the regularly conducted activity and were made by the regularly conducted activity as a regular practice.

5.  I certify that all the documents attached to the Motion as Exhibits are true and accurate copies of the original documents.

6.  On November 23, 2021, the Debtor executed a Retail Installment Contract (the "Contract") for the purchase of the collateral described as follows: 2020 Ram Promaster Cargo Van VIN No. 3C6TRVDG2LE118190 ("Vehicle").

7.  According to the JD Power, the retail value of the Vehicle is $25,300.00.

8.  As of August 26, 2025, the Debtor owes a contract balance to Movant of $35,511.91.

9.  The Vehicle was impounded on June 13, 2025.

FURTHER AFFIANT SAYETH NOT

Printed Name: PAUL TANGEN
Job Title: BANKRUPTCY ANALYST
AIS Portfolio Services, LLC

SUBSCRIBED AND SWORN TO BEFORE ME by Paul Tangen on this 3rd day of September, 2025.

Notary Public

My commission expires 6/11/2028



DENISE LYNN WILLIAMS
My Notary ID # 130681341
Expires June 11, 2028

Exhibit A

LAW 553-NY-B-A-e 10/18

## RETAIL INSTALMENT CONTRACT
## SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

Dealer Number _____  Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| YF LOGISTICS LLC<br>400 CABOT DR STE A<br>HAMILTON, MERCER, NJ 08691 | N/A | QUEENS 26 MOTORS CORP<br>7212 QUEENS BLVD<br>WOODSIDE, NY 11377-5104 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2020 | RAM PROMASTER CARGO VAN | 3C6TRVDG2LE118190 | Personal, family, or household unless otherwise indicated below<br>[X] business<br>[ ] agricultural  [ ] N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 500.00 is |
|---|---|---|---|---|
| 4.74 % | $ 7,310.30 | $ 48,449.38 | $ 55,759.68 | $ 56,259.68 |

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _[signature]_
Co-Buyer Signs X N/A

### Your Payment Schedule Will Be:
(e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 774.44 | Monthly beginning 12/23/2021 |
| One Final Payment Of | $ N/A | On  N/A |

Or As Follows: N/A

**GAP Waiver Notice**
[X] If this box is checked, and if the vehicle is a total loss because it is confiscated, damaged, or stolen, you will not be liable for the gap amount. The gap amount is the excess, if any, of (1) the amount you would owe under this contract as of the date of loss if the vehicle were not a total loss and you were to prepay the contract in full (less any refunds we get for cancelling optional insurance, maintenance, service or other contracts), over (2) the sum of (a) any past due payments and other amounts due because you broke promises in this contract and (b) the actual cash value of the vehicle immediately before the loss.

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __1.00__ or __5__ % of the part of the payment that is late, whichever is __greater__.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**WARRANTIES**
The following paragraph does not affect any warranties covering the vehicle that the manufacturer may provide or limit any rights you may have under the Lemon Laws or, for used vehicles, under the certificate of servicibility that was included in your purchase contract. The following paragraph also does not apply if the vehicle is a used vehicle you bought in New York City.
Unless the Seller makes a written warranty or enters into a service contract within 90 days of the date of this contract, the Seller makes no warranties on the vehicle. Making no warranties means that you get no express warranties, and no implied warranties of merchantability or fitness for a particular purpose.

The following notice only applies to used vehicles bought in New York City:
**IMPORTANT NOTICE TO BUYER**
(A) STATE LAW REQUIRES THAT SELLERS OF SECOND-HAND CARS CERTIFY IN WRITING TO THE BUYER THAT EACH CAR IS IN SAFE CONDITION AT THE TIME OF SALE.
(B) THIS CERTIFICATION IS A GUARANTEE THAT THE CAR IS IN SAFE CONDITION AT THE TIME OF SALE.
(C) YOU HAVE A RIGHT TO REQUEST THE DEALER TO REPAIR OR TO PAY IN FULL FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH DOES NOT COMPLY WITH THIS CERTIFICATION.
(D) THIS BUSINESS IS LICENSED BY THE DEPARTMENT OF CONSUMER AFFAIRS, 42 BROADWAY, NEW YORK, NEW YORK 10004. COMPLAINT PHONE: (212) 639-9675.

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including $ 3,014.38 sales tax) ............................................. $ 48,514.38 (1)
2. Total Downpayment =

    Your trade-in is a N/A / N/A / / N/A
    Year / Make / Model / Vehicle Identification No.

    | | |
    |---|---|
    | Gross Trade-In Allowance | $ N/A |
    | Less Prior Credit or Lease Balance (e) | $ N/A |
    | Equals Net Trade In | $ N/A |
    | + Cash | $ 500.00 |
    | + Other N/A | $ N/A |
    | + Other N/A | $ N/A |

    (If total downpayment is negative, enter "0" and see 4I below)  $ 500.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2) .................................. $ 48,014.38 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf

    (Seller may keep part of these amounts):

    A. Cost of Optional Credit Insurance
       Paid to Insurance Company or Companies
       Life $ N/A
       Disability $ N/A  $ N/A
    B. Vendor's Single Interest Insurance Paid to Insurance Company  $ N/A
    C. Other Optional Insurance Paid to Insurance Company or Companies  $ N/A
    D. Fees Paid to Government Agencies
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A
    E. Government Taxes Not Included in Cash Price  $ N/A
    F. Government License and/or Registration Fees
       STATE  $ 360.00
    G. Government Certificate of Title Fees  $ N/A
    H. Government Waste Tire Management Fee  $ N/A
    I. Other Charges (Seller must identify who is paid and describe purpose)
       to N/A  for Prior Credit or Lease Balance (e)  $ N/A
       to DEALER  for DOCUMENTATION FEE  $ 75.00
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A
       to N/A  for N/A  $ N/A

    Total Other Charges and Amounts Paid to Others on Your Behalf  $ 435.00 (4)

5. Amount Financed (3 + 4)  $ 48,449.38 (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____N/A_____ , Year __N/A__ . SELLER'S INITIALS __N/A__

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is** $ N/A and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**Returned Check Charge:** You agree to pay a charge of $ 20 if any check you give us is dishonored.

---

**Insurance:** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
### Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:
  Credit Life $ N/A
  Credit Disability $ N/A

Insurance Company Name
N/A

Home Office Address
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐ N/A  N/A
   Type of Insurance  Term

Premium $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

☐ N/A  N/A
   Type of Insurance  Term

Premium $ N/A
Insurance Company Name
N/A
Home Office Address
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X  N/A  N/A
   Buyer Signature  Date
X  N/A  N/A
   Co-Buyer Signature  Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

Non-Authoritative Copy    Ally Bank - 11/30/2021

**NO COOLING OFF PERIOD UNLESS YOU HAVE A CONTRACT CANCELLATION OPTION**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales. It also does not apply if you buy a used vehicle from a Seller-Creditor located in New York City and you did not decline your option to cancel. The laws of New York City provide a two-day cancellation option if you buy a used vehicle. This cancellation option is subject to certain conditions. See the NYC Used Car Contract Cancellation Option agreement for details.

☐ If checked, your last installment payment under this contract is a balloon payment ("Balloon Payment"). You have the option to do one or more of the following, as checked, at the time the Balloon Payment is due:
   a) ☐ You may pay your Balloon Payment when due.
   b) ☐ You may refinance the Balloon Payment. See paragraph 1.e. below for details.
   c) ☐ You may sell the vehicle back to us. See paragraph 1.e. below for details. If you exercise this option, $ N/A per mile for each mile in excess of N/A miles shown on the odometer will be deducted from the sale price. The sale price will also be adjusted for excess wear and use as provided in paragraph 1.e.

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 2 of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.
If the actual payoff amount is more than the amount shown in 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 2 Seller will refund to you any overage Seller receives from your prior lienholder or lessor.
Buyer Signature X  N/A                                         Co-Buyer Signature X  N/A

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **Balloon Payment Options.** Your Balloon Payment is due and payable as disclosed above. Because the contract is a simple finance charge contract, your Balloon Payment may differ from the amount shown depending on your payment habits. If checked above, you have the following options.
      *Pay in Full.* You may pay the Balloon Payment in full when due.
      *Refinance.* You may refinance the Balloon Payment unless you are in default under the contract. If we have advanced funds to cure any default, you must pay us back before the refinancing. You also must provide proof of insurance acceptable to us before the refinancing. The annual percentage rate for the refinancing will be the lower of the rate agreed to by you and us at the time of refinancing or the maximum rate permitted by law. The term of the refinancing will be based on the amount refinanced, the rate, and the amount of the monthly payment. The refinanced monthly payment will be the same as in this contract if the refinanced amount will be fully paid within 36 months of the due date of the Balloon Payment. Otherwise, the monthly payment amount will be the amount needed to fully pay the refinanced amount within 36 months of the due date of the Balloon Payment. If you wish to refinance, you must notify us in writing. The notice must be received no later than 30 days prior to the due date of the Balloon Payment. If you choose to refinance the Balloon Payment at the time the Balloon Payment is due, we will provide you with the disclosures required under the federal Truth in Lending Act in the agreement to refinance we make with you. Both you and we must sign the agreement to refinance.
      *Sell Back.* You may sell the vehicle to us for an amount equal to the Balloon Payment. You must pay us any other amount owed under the contract. The amount you owe will be based, in part, on the vehicle's mileage. You also must pay us the estimated costs of all repairs to the vehicle that are the result of excess mileage and excess wear and use, as described on this page. You must take the vehicle for inspection, to a place we select, no later than 15 days prior to the Balloon Payment due date. After the inspection, if you decide to sell the vehicle to us, you must deliver the vehicle to us no later than the Balloon Payment due date. At that time, you must also give us a title, which shows no liens other than our lien, transferring ownership to us or a person we select. After the inspection, if you decide not to sell the vehicle to us, you must immediately contact us and tell us whether you want to pay or refinance the last installment payment.
      You must pay us the excess mileage fee shown above. You are also responsible for repairs of all damage to the vehicle that is the result of excess wear and use. These repairs include, but are not limited to:
      • Replace any tire not part of a matching set of four or any tire which has less than 1/8 inch of remaining tread.
      • Repair all mechanical defects.
      • Repair or replace all dented, scratched, chipped, rusted or mismatched body panels, paint or vehicle identification items; all dented, scratched, rusted, pitted, broken or missing trim and grill work; all scratched, cracked, pitted or broken glass; all faulty window mechanisms; all stains, burns or worn areas; and all damage which would be covered by collision or comprehensive insurance whether or not such insurance is actually in force.

Non-Authoritative Copy   Ally Bank - 11/30/2021

If you have not made the repairs before inspection of the vehicle you will owe the estimated costs of such repairs, even if the repairs are not made prior to your sale of the vehicle to us. If you disagree with the estimated costs of repairs, you may have the repairs made at your expense prior to your sale of the vehicle to us.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** The following paragraph does not apply if the box in the GAP Waiver Notice on page 1 of this contract is checked.
      You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing. The terms and conditions of your liability if the vehicle is damaged, destroyed, or missing are described in a separate document you sign. The document is a part of this contract.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      - The vehicle and all parts or goods put on it;
      - All money or goods received (proceeds) for the vehicle;
      - All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract.
      If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once subject to any right you have to reinstate the contract for less (see below). Default means:
      - You do not pay any payment on time;
      - You give false, incomplete, or misleading information on a credit application;
      - You start a proceeding in bankruptcy or one is started against you or your property; or
      - You break any agreements in this contract.
      
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Prepaid Finance Charge and the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's fee and court costs as permitted by law. The maximum attorney's fee you will pay will be 15% of the amount you owe.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back. If two things are true, you have the right to get the vehicle back by paying all past due payments, any late charges, and any expenses we incurred related to retaking the vehicle, holding it, and preparing it for sale (reinstate). First, you must have bought the vehicle primarily for personal, family, or household use. Second, your only default is a failure to pay an instalment payment on time. Otherwise, we will tell you how much to pay to get the vehicle back. Your right to get the vehicle back ends when we sell it.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

Non-Authoritative Copy   Ally Bank - 11/30/2021

Non-Authoritative Copy   Ally Bank - 11/30/2021

4. **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **APPLICABLE LAW**
Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Non-Authoritative Copy   Ally Bank - 11/30/2021

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs **X** _/s/_____  Co-Buyer Signs **X** _N/A_____

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**See the rest of this contract for other important agreements.**

**NOTICE TO BUYER: 1.** Do not sign this agreement before you read it or if it contains any blank space. **2.** You are entitled to a completely filled in copy of the agreement. **3.** Under the law, you have a right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. **4.** According to law, you have the privilege of purchasing the insurance on the motor vehicle provided for in this contract from an agent or broker of your own selection.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 5, before signing below. You confirm that you received a completely filled-in copy when you signed it.

**RETAIL INSTALMENT CONTRACT**

Buyer Signs **X** _/s/_____ president_____  Date _11/23/2021_  Co-Buyer Signs **X** _N/A_____  Date _N/A____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X** _N/A_____  Address _____N/A_____

Seller signs _QUEENS 26 MOTORS CORP_____  Date _11/23/2021_  By **X** _/s/_____  Title _f&i_

Non-Authoritative Copy   Ally Bank - 11/30/2021

Non-Authoritative Copy   Ally Bank - 11/30/2021

# Exhibit B

# CERTIFICATE OF TITLE

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|---|---|
| 3C6TR | VDG2L E1181 | 90 Z | 2020 | RAM | PRO | VAN |

| TYPE OF TITLE | DUPLICATE NO. | GVW/WC/LGTH. | COLOR/MTL/HP | DEALER I.D. | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| STANDARD | | 8 | WHITE | | ■ | |

| FEE | ISSUE DATE | VIN-REPLACEMENT | MILEAGE | | STATUS |
|---|---|---|---|---|---|
| 85.00 | 02-11-2022 | | 36062 | A | |

OWNER(S)

YF LOGISTICS LLC
400 CABOTE DR STE A
HAMILTON TWP   NJ 08691

F-FLOOD       S-SALVAGE
P-POLICE      T-TAXI
L-LEMON LAW
A-ACTUAL MILEAGE
N-NOT THE ACTUAL MILEAGE
M-MILEAGE EXCEEDS THE MECHANICAL LIMITS

NUMBER OF OWNERS: ■

NUMBER OF LIENHOLDERS: ■

OWNER DL/CC #: ███████

I, CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION, OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY THAT EVIDENCE OF PURCHASE OF OWNERSHIP, IN COMPLIANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, OF THE DESCRIBED ARTICLE, HAS BEEN RECORDED AND FILED WITH ME, AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO SECURITY AGREEMENT OR LIEN, IF ANY AS STATED.

SIGNATURE

CONTROL NUMBER: ███████

State of New Jersey
MOTOR VEHICLE COMMISSION

SECOND LIENHOLDER
DATE

FIRST LIENHOLDER
DATE  02-11-2022
03634 74602 10300
ALLY FINANCIAL INC
PO BOX 8140
COCKEYSVILLE   MD 21030

LIEN RELEASED BY:
SIGNATURE _____
SECOND RELEASE
TITLE _____ DATE _____

LIEN RELEASED BY:
SIGNATURE _____
FIRST RELEASE
TITLE _____ DATE _____

BA ███████

**ALTERATION OR ERASURE VOIDS THIS TITLE — KEEP IN SAFE PLACE**

**VOID IF ALTERED**

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK

# Exhibit C

# N.A.D.A. Official Used Car Guide
# Vehicle Valuation

Print Date: July 17, 2025

---

Vehicle Description:  2020 Dodge Commercial ProMaster 2500 159" W.B. High Roof
VIN:  3C6TRVDG2LE118190

**Base Values**

Retail: $ 25300.00              Wholesale/Trade-in: $ 19000.00

**Optional Equipment/Adjustments**

Estimated Miles: 153000         $ 0.00

**Total Adjusted N.A.D.A. Used Car Guide Values**

Retail: $ 25300.00              Retail/Wholesale Average: $ 22150.00

Reference 07/2025 Eastern